**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

DELBERT   JENNINGS   and   REBECCA
JENNINGS,

        Plaintiffs,                   Case No. 2:15-cv-00341-JES-CM

v.

AARON'S SALES & LEASE OWNERSHIP,
INC., a/k/a AARON'S INC.,

        Defendant.
_____/

**PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S**
**COUNTERCLAIM AND INCORPORATED MEMORANDUM OF LAW**

       COME NOW the Plaintiffs, DELBERT JENNINGS and REBECCA JENNINGS, by and

through undersigned counsel and pursuant to Federal Rules of Civil Procedure 8 and 12, and

hereby move this Honorable Court to dismiss the Counterclaim filed by Defendant, AARON`S

SALES & LEASE OWNERSHIP, INC., on June 8, 2015.  As grounds therefore, Plaintiffs state the

following:

**FACTUAL AND PROCEDURAL HISTORY**

       This case originated on October 29, 2013, with Plaintiffs filing an action in state court[1]

alleging violations of the Florida Consumer Collection Practices Act ("FCCPA"), Florida Statute

§ 559.55, *et seq.*  The basis of Plaintiffs' claims arose from Defendant's unrelenting attempts to

collect consumer debt, both in person and via phone.  As alleged in Plaintiffs' Amended

Complaint, Defendant's employees made numerous visits to their home, during which

Defendant's employees violently banged on Plaintiffs' door, screamed at Plaintiffs through their

---

[1] *Jennings v. Aaron's Sales & Lease Ownership, Inc.*, in the Circuit Court for the Twentieth Judicial Circuit in and
for Lee County, Florida, case number 13-CA-002990

door, and threatened to have Plaintiffs arrested for non-payment of the debt allegedly owed to Defendant.  During the numerous phone calls placed to Plaintiffs, Defendant's employees further threatened to have Plaintiffs arrested for failure to pay on their account.  Plaintiffs then sought the assistance of legal counsel, and filed suit against Defendant for violations of the FCCPA. During the discovery phase of such state court action, Plaintiffs discovered additional claims to be asserted against Defendant for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  The parties hereto entered into an agreed order granting Plaintiffs' Motion to Amend Complaint, and Plaintiffs' First Amended Complaint was deemed filed and served on May 19, 2015.

Subsequently, Defendant removed the instant action to this Court on June 4, 2015 (Doc. No. 1), and filed its Answer and Affirmative Defenses to the First Amended Complaint and Counterclaim on June 8, 2015 (Doc. No. 4).  Defendant's Counterclaim is based on a number of alleged contracts for the lease of furniture and other household goods.  Defendant's Counterclaim asserts that Plaintiffs breached such agreements by failing to make timely payments thereunder.  The Counterclaim sets forth numerous state law causes of action, all of which sound in breach of contract, goods delivered or sold, and unjust enrichment.  For several reasons, this Counterclaim must be dismissed.

## LEGAL ARGUMENT

## I.   THIS COURT MUST DISMISS THE COUNTERCLAIM FOR LACK OF JURISDICTION

"It is a fundamental precept that federal courts are courts of limited jurisdiction."  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  Under 28 U.S.C. §§ 1331 and 1332, federal courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treatises of the United States" as well as in civil actions where there exists complete diversity

of citizenship between the parties thereto, as well as an amount in controversy exceeding $75,000. In the case at bar, it is uncontested that this Court has jurisdiction over Plaintiffs' federal TCPA claims under 28 U.S.C. § 1331, and has supplemental jurisdiction over Plaintiffs' state FCCPA claims under 28 U.S.C. § 1367(a). However, the Court lacks original jurisdiction over Defendant's state law Counterclaim, which includes *only* state law causes of action, and claims a total amount in controversy not exceeding $75,000, the Court further lacks diversity jurisdiction over such claims.

The only basis this Court may have over Defendant's Counterclaim can be supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Section 1367(a) states, in pertinent part:

> Except as provided in subsections (b) and (c) […], in every civil action of which district courts shall have original jurisdiction, the district court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they *form part of the same case or controversy* under Article III of the United States Constitution.

(emphasis added); s*ee also Lucero v. Trosch*, 121 F. 3d 591, 597 (11th Cir. 1997). "The constitutional 'case or controversy' standard, in turn, confers jurisdiction over all claims which arise out of a common nucleus of operative facts with the federal claim." *Scott v. A & Z Gen. Cleaning Servs., Inc.*, 2011 WL 3516075, *1 (M.D. Fla. 2011), *citing Parker v. Scrap Metal Processors, Inc.*, 468 F. 3d 733, 743 (11th Cir. 2006); *see also Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta*, 701 F. 3d 669, 679 (11th Cir. 2012). "A state cause of action which requires more proof than the federal claim is still within the court's supplemental jurisdiction if 'both claims clearly arise from the same set of facts.'" *Scott,* 2011 WL 3516075 at *1, *citing Milan Exp., Inc. v. Averitt Exp., Inc.*, 208 F. 3d 975, 980 (11th Cir. 2000); *Tamiami Partners Ltd. ex rel. Tamiami Dev. Corp. v. Miccosukee Tribe of Fla.*, 177 F. 3d 1212, 1223-24 (11th Cir. 1999).

It is clear that Defendant's Counterclaim will require more proof than Plaintiffs' claims under the TCPA and FCCPA.  Specifically, Defendant's claims will require proof that Plaintiffs became indebted to Defendant, which debt Plaintiffs failed to pay.  Such proof is irrelevant to Plaintiffs' action because "[w]hether a plaintiff in an unfair debt collection practices action actually has outstanding debt is irrelevant to the merits of that claim." *Sparrow v. Mazda Am. Cred.*, 385 F. Supp. 2d 1063, 1069 (E.D. Cal. 2005), *citing Baker v. G.C. Servs. Corp.*, 677 F. 2d 775, 777 (9th Cir. 1982); *see also McCartney v. First City Bank*, 970 F. 2d 45, 47 (5th Cir. 1992); *Keele v. Wexler*, 149 F. 3d 589, 594 (7th Cir. 1998).  Under § 1367(a) and the relevant case law, this Court has supplemental jurisdiction over Defendant's Counterclaim *only* if the Counterclaim arises from the same "common nucleus of operative facts" as Plaintiffs' TCPA and FCCPA claims.  "The Eleventh Circuit has stated that courts 'take the nucleus of facts on which the federal question claims are based and compare it to the nucleus of facts on which the state law claims are based." *Woodard v. Town of Oakman, Ala.*, 970 F. Supp. 2d 1259, 1276 (N.D. Ala. 2013), *citing Upper Chattahoochee Riverkeeper Fund, Inc., Id.*  "The Comparison 'is not a results-oriented analysis, but a fact-oriented one.'" *Id.*  "In deciding whether a state law claim is part of the same case or controversy as a federal issue, we look to whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence." *Hudson v. Delta Air Lines, Inc.*, 90 F. 3d 451, 455 (11th Cir. 1996), *citing Palmer v. Hosp. Auth. of Randolph Co.*, 22 F. 3d 1559, 1566 (11th Cir. 1994).

In analyzing the nucleus of facts on which Plaintiffs' case is brought, it is clear that they are largely unrelated to the claims raised in Defendant's Counterclaim.  A simple comparison of Plaintiffs' Amended Complaint to Defendant's Counterclaim reveals that the two share only one loose factual allegation that, at some point, there were transactions between the two parties that

resulted in the creation of a consumer debt.  The remaining allegations of Plaintiffs' Amended Complaint all focus squarely on Defendant's harassing conduct in violation of the TCPA and FCCPA, specifically: (1) that Defendant made phone calls to Plaintiffs with frequency that can be considered harassing under the FCCPA; (2) that Defendant used an auto-dialing system to place such calls to Plaintiffs' cell phone without consent to do so in violation of the TCPA; (3) that Defendant engaged in significantly harassing conduct during its many field visits to Plaintiffs' residence in violation of the FCCPA; (4) that Defendant, by and through its employees, both in person and over the phone, told Plaintiffs on several occasions that they would be arrested for non-payment of debt in violation of the FCCPA; and (5) that Defendant continued to make direct contact with Plaintiffs even after being notified that Plaintiffs were represented by counsel, in further violation of the FCCPA.  In contrast, the allegations of Defendant's Counterclaim merely recite the elements for breach of contract, goods delivered or sold, and unjust enrichment in relation to the debt allegedly owed by Plaintiffs.  Aside from the singular allegation that the parties had transactions at some point which created a consumer debt, Plaintiffs' Amended Complaint does not make reference to goods provided by Defendant, nor does it reference any contracts or other agreements between the parties.  Similarly, Defendant's Counterclaim makes no reference whatsoever to any phone calls, field visits, or any other communications between the parties.  Clearly, the claims involve different facts which do not overlap in any significant manner.

Further, the claims do not involve similar occurrences, witnesses or evidence.  As outlined above, the occurrences at issue in Plaintiffs' Amended Complaint involve harassing communications made by Defendant, which communications would not even come into play in Defendant's Counterclaim as they are not related to any elements required to prove Defendant's

various causes of action.  In contrast, the occurrences at issue in Defendant's Counterclaim are merely instances wherein Plaintiffs allegedly failed to make a payment allegedly due under the terms of several contracts.  The witnesses required to prove each claim are decidedly different as well.  Generally, Plaintiffs' TCPA and FCCPA claims will require testimony from the Plaintiffs themselves, as well as that of the Defendant's employees who are alleged to have made the violative communications.   Meanwhile, Defendant's Counterclaim will require Defendant's records custodian to testify as to Defendant's business records in order to establish the existence of contracts between the parties, and to establish the failure of Plaintiffs to make payments on a date certain.  Finally, the evidence required to prove each claim is distinctly different.  The evidence required to prove a cause of action for abusive debt collection is "distinct and unrelated" to evidence required to prove a breach of contract claim.  *Moore v. Old Canal Fin. Corp.*, 2006 WL 851114, *3 (D. Idaho 2006).   To prove their TCPA and FCCPA claims, Plaintiffs will offer testimony and other evidence as to the frequency and content of phone calls and other communications made to Plaintiffs by Defendant.   Meanwhile, Defendant's Counterclaim requires no evidence of any communications between the parties, and requires only evidence regarding the existence of various contracts and each party's performance, or lack thereof, under such contracts.

Based on the above analysis, it is clear that two parties' claims do not form the same case or controversy, as Defendant's Counterclaim does not arise from the same "common nucleus of operative facts" as Plaintiffs' TCPA and FCCPA claims.   Accordingly, this Court lacks jurisdiction to hear the Counterclaim under § 1367(a), and the Counterclaim must be dismissed.

## II.   ALTERNATIVELY, THIS COURT SHOULD EXERCISE ITS DISCRETION PURSUANT TO 28 U.S.C. § 1367 TO DECLINE JURISDICTION AND DISMISS DEFENDANT'S STATE LAW COUNTERCLAIM

In the event that this Court finds that the parties' claims do form the same case or controversy such that the Court has jurisdiction over Defendant's Counterclaim under § 1367(a), this Court should still dismiss the Counterclaim under § 1367(c).

### A.   Defendant's Counterclaim is Permissive and Not Compulsory

"If the Court has the power to exercise supplemental jurisdiction as specified in § 1367(a), it must nonetheless consider § 1367(c) to determine whether jurisdiction over the state claim is appropriate."  *Woodard*, 970 F. Supp. 2d at 1276 *citing Parker*, 468 F.3d at 743. Plaintiffs submit that this Court should decline jurisdiction over Defendant's Counterclaim based on the discretion afforded by § 1367(c).  To determine whether such statute applies, the Court must first decide whether the Counterclaim is compulsory or permissive.  "Under Fed. R. Civ. P. 13(a), if a defending party's counterclaim arises from the same transaction or occurrence that is the subject matter of the plaintiff's claim then the counterclaim is compulsory."  *U.S. ex rel. Mueller v. Eckerd Corp.*, 184 F.R.D. 686, 687 (M.D. Fla. 1999), *citing Plant v. Blazer Fin. Serv.*, 598 F. 2d 1357 (5th Cir. 1979); *see also Rep. Health Corp. v. Lifemark Hosps. of Fla., Inc.*, 755 F. 2d 1453, 1455 (11th Cir. 1985).  The distinction between a compulsory and a permissive counterclaim is significant where, as here, the counterclaim deals with only state law issues, over which a federal court would otherwise have no jurisdiction.  The Eleventh Circuit employs the "logical relationship" test to determine whether a counterclaim is compulsory.  *Rep. Health Corp.* 755 F. 2d at 1455.  "Under this test, there is a logical relationship when 'the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant.'"  *Id., quoting*

*Plant v. Blazer Fin. Servs., Inc.*, 598 F. 2d 1357, 1361 (5th Cir. 1979).  In *Greater Lakes Rubber Corp v. Herbert Cooper Co., Inc.*, 286 F. 2d 631 (3rd Cir. 1961), the Third Circuit stated that a logical relationship between claims exists where "separate trials on each … [claim] would involve a substantial duplication of effort by the parties and the courts."  *Id.* at 634.  Some courts also consider whether "the collateral estoppel effect of … the first action would preclude [the claims from being brought in a later action]."  *Randall v. Nelson & Kennard*, 2009 WL 2710141, *3 (D. Ariz. 2009), *citing Pochiro v. Prudential Ins. Co. of Amer.*, 827 F. 2d 1246, 1251 (9th Cir. 1987).  The logical relationship test is widely used by sister circuits to determine the nature of a counterclaim.  *See Harris v. Steinem*, 571 F. 2d 119, 123 (2nd Cir. 1978); *Xerox Corp. v. SCM Corp.*, 576 F. 2d 1057, 1059 (3rd Cir. 1978); *Montgomery Elevator Co. v. Building Engineering Servs. Co.*, 730 F. 2d 377, 380 (5th Cir. 1984); *Burlington Northern R. Co. v. Strong*, 907 F. 2d 707, 711 (7th Cir. 1990); *Peterson v. United Accounts, Inc.*, 638 F. 2d 1134, 1136 (8th Cir. 1981); *Pochiro*, 827 F.2d at 1249.  Thus, determining whether a counterclaim is permissive or compulsory turns directly on the basis of the original action in relation to the counterclaim.

Plaintiffs originally filed this suit under the FCCPA, Florida Statute § 559.55, *et seq.*, for Defendant's violations of same.  The FCCPA is Florida's counterpart to the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*.  While the two statutes are substantially similar in both purpose and content, there are a few significant differences between them.  The FCCPA specifically provides that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act."  *See* Fla. Stat. § 559.77(5).  The FCCPA was clearly drafted to provide the strongest consumer protection between the two statutes, as the FCCPA also specifically provides that "[i]n the event of any inconsistency between any provision of this

part and any provision of the federal act, the provision which is more protective of the consumer or debtor shall prevail."   Accordingly, in deciding FCCPA cases, courts frequently look to federal FDCPA decisions for guidance.   In this context, the Court should determine whether Defendant's Counterclaim is permissive or compulsory to Plaintiffs' FCCPA claims in the same manner it would if Plaintiffs' claims were brought under the FDCPA.

Meanwhile, Defendant's Counterclaim is based solely on state law causes of action for alleged unpaid debt and alleged breaches of the numerous contracts between Plaintiffs and Defendant for the purchase of certain household goods.   Defendants violated the FCCPA, as well as the TCPA, in furtherance of its efforts to collect such debt from the Plaintiffs.   In order to determine that the Counterclaim is compulsory, this Court must determine that the same operative facts serve as the basis for both the Amended Complaint and the Counterclaim.   The Court may also consider whether separate trials on Plaintiffs' and Defendant's respective claims would involve a substantial duplication of effort by those involved, and whether adjudication of the main case would bar or otherwise affect a creditor's ability to bring suit for such debt in state court.   The answer to all of these questions is negative; therefore, the only conclusion is that Defendant's Counterclaim is permissive and not compulsory.

It is widely held that an FDCPA action and a counterclaim to recover the underlying debt do not bear a logical relationship to each other.   "[E]very published decision directly addressing the issue in this case has found that FDCPA lawsuits and lawsuits arising from the underlying contractual debt are not compulsory counterclaims."   *Hart v. Clayton-Parker and Assocs, Inc.*, 869 F. Supp. 774, 777 (D. Ariz. 1994), *citing Peterson*, 638 F. 2d 1134 at 1137; *Ayres v. Nat'l Cred. Mgmt. Corp.*, 1991 WL 66845, *4 (E.D. Pa. 1991); *Gutshall v. Bailey and Assocs.*, 1991 WL 166963, *2 (N.D. Ill. 1991); *Leatherwood v. Univ. Bus. Serv. Co.*, 115 F.R.D. 48, 49

(W.D.N.Y. 1987); *see also Kimmel v. Cavalry Portfolio Servs.*, LLC, 2010 WL 3860370, *3 (E.D. Pa. 2010); *Martin v. Law Offices of John F. Edwards*, 262 F.R.D. 534, 536 (S.D. Cal. 2009); *Randall,* 2009 WL 2710141 at *3; *Hurtado v. TAM Fin. Co.*, 2007 WL 1746884, *2 (W.D. Tex. 2007); *Avery v. First Res. Mgmt. Corp.*, 2007 WL 1560653, *7 (D. Ore. 2007); *Moore*, 2006 WL 851114 at *3; *Sparrow*, 385 F. Supp. 2d at 1069; *Orloff v. Syndicated Office Sys.*, 2003 WL 22100868, *3 (E.D. Pa. 2003); *Taylor v. Bryant, Inc.*, 275 F. Supp. 2d 1305, 1307 (D. Nev. 2003).

In deciding that an FDCPA action bears no relation to a suit for the underlying debt such that the debt claim is compulsory, courts have stated that "the circumstances giving rise to the original debt are separate and distinct from the collection activities undertaken" to collect such debt. *See Randall,* 2009 WL 2710141 at *3 (*citing Peterson*, 638 F. 2d 1134 at 1137). The *Peterson* court provided the following well-reasoned analysis:

> While the debt claim and the FDCPA counterclaim raised here may, in a technical sense, arise from the same loan transaction, *the two claims bear no logical relation to one another*. Although there is some overlap of issues raised in both cases as a result of the defenses raised in the state action, the suit on the debt brought in state court is not logically related to the federal action initiated to enforce federal policy regulating the practices for the collection of such debts.

*Id.* (emphasis added).   In *Orloff*, the district court discussed the differences between the two actions at length:

> In order to prevail on her claims, Plaintiff must prove that the letters sent to her by Defendants violated the FDCPA […].   To prevail on the breach of contract counterclaim Defendant must prove (1) the existence of a contract and its essential terms; (2) breach of a duty imposed by the contract; and (3) resultant damages.
>
> […]

Although the claims of Plaintiff and Defendants are both based upon Plaintiff's receipt of medical services, it is clear that the issues of fact and law raised by Plaintiff's claims under the FDCPA […] are completely different than those raised by Defendants' claim for breach of contract. Plaintiff's claims involve issues of statutory compliance. Defendants' counterclaim is simply a state law debt collection claim. The evidence needed to prove violations of the FDCPA […] has no relevance whatsoever to the alleged breach of contract claim. Moreover, the evidence needed to prove breach of contract does nothing to establish violations of the FDCPA […]. In addition, the Defendants' counterclaim would not be subject to the defense of *res judicata* in a subsequent action. Even if Defendants violated the FDCPA […], they may pursue a breach of contract claim against the Plaintiff in state court to collect this debt. The Defendants' right to pursue their state claim is not dependent on the outcome of this litigation. Evidence of Plaintiff's failure to pay Defendants money owed to them has no relevance on the issue of whether the Defendants' actions in collecting the debt violated federal law.

[…]

Although the Plaintiff's claims and Defendants' counterclaim involve the same parties, the similarity stops there. The proofs necessary for each claim are different and separate trials would certainly not involve a substantial duplication of effort and time by the parties or the courts.

[…]

No such relationship exists between plaintiff's FDCPA claim and defendant's claims on the debt. Although defendant's right to payment from plaintiff is certainly factually linked to the fairness of defendant's collection practices – there being no attempted collection without an alleged debt – a cause of action on the debt arises out of events different from the cause of action for abuse in collecting. The former centers on evidence regarding the existence of a contract, the failure to perform on a contract, or other circumstances leading to the creation of a valid debt. The latter centers on evidence regarding the improprieties and transgressions, as defined by the FDCPA, in the procedures used to collect the debt, regardless of the debt's validity.

*Orloff*, 2003 WL 22100868 at *2 (internal citations omitted). Using the "logical relationship"

test, which has been adopted by the Eleventh Circuit, courts in many sister circuits have reached

the same conclusion.  The evidence required to prove a cause of action for abusive debt collection is "distinct and unrelated" to evidence required to prove a breach of contract claim. *See Moore*, 2006 WL 851114 at \*3.  Furthermore, "[w]hether a plaintiff in an unfair debt collection practices action actually has outstanding debt is irrelevant to the merits of that claim." *Sparrow*, 385 F. Supp. 2d at 1069, *citing Baker*, 677 F. 2d at 777; *see also McCartney*, 970 F. 2d at 47; *Keele*, 149 F. 3d at 594.

Here, the Complaint and the Counterclaim do not arise from the same set of operative facts.  Because of the evidentiary discrepancies between the two claims, separate trials would not involve substantial duplication of the parties' efforts.  *See Goings v. Advanced Sys., Inc.*, 2008 WL 4195889, \*3 (M.D. Fla. 2008) (counterclaims were not compulsory where most of the facts needed for prosecution and defense of plaintiff's Fair Labor Standards Act claims were distinct from the facts needed to litigate defendant's counterclaim for breach of contract, separate trials of the claims would not involve substantial duplication of effort, and elements of proof for each claim were distinct from one another).  Finally, adjudication of the abusive debt collection action does not bar or otherwise affect a creditor's ability to bring suit for such debt in state court.  No matter what approach is used, an FDCPA action and a counterclaim to collect the underlying debt do not share a logical relationship such that the debt counterclaim is compulsory.

Accordingly, Defendant's Counterclaim herein *must* be permissive under Fed. R. Civ. P. 13(b), and this Court has discretion to decline jurisdiction over such Counterclaim pursuant to 28 U.S.C. § 1367.

## B.   Jurisdiction Over Defendant's Counterclaim Should Be Declined Under § 1367(c)

As Defendant's state law Counterclaim is permissive rather than compulsory, 28 U.S.C. § 1367(c) gives a district court discretion to decline supplemental jurisdiction over a claim if "(1)

the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *See* 28 U.S.C. § 1367(c)(1)-(4); *see also Jinks v. Richland Co., S.C.*, 538 U.S. 456 (2003).  Plaintiffs submit that this Court should exercise its discretion and decline supplemental jurisdiction over the Counterclaim under 28 U.S.C. § 1367(c)(2) and (4).

i.     The Counterclaim predominates over Plaintiff's claim such that supplemental jurisdiction should be declined under § 1367(c)(2)

As stated above, this Court unquestionably has original jurisdiction over the claims made in Plaintiffs' First Amended Complaint, but lacks original jurisdiction over Defendant's breach of contract, goods delivered or sold, and unjust enrichment claims.  Therefore, the inquiry under 28 U.S.C. § 1367(c)(2) becomes whether Defendant's Counterclaim predominates over Plaintiffs' TCPA and FCCPA claims.  "Substantial predominance exists 'when it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage.'" *Morgan v. Christensen*, 582 Fed. Appx. 806, 808 (11th Cir. 2014), *quoting Parker*, 468 F. 3d at 744.

In determining whether a permissive counterclaim predominates over the main case such that jurisdiction of the counterclaim should be declined under 28 U.S.C. § 1367(c)(2), the Middle District of Florida has previously looked to the elements required to prove the claims set forth by the counterclaimant.  In *Cruz v. Winter Garden Realty, LLC*, 2012 WL 6212909 (M.D. Fla. 2012), Magistrate Karla R. Spaulding decided that tortious interference, civil theft and conversion counterclaims would predominate over a plaintiff's federal Fair Labor Standards Act ("FLSA") claim.  In doing so, the court analyzed the elements required to prove each cause of

action alleged in the defendant's counterclaim, and stated that "[m]any, if not all, of these elements" were "foreign to [plaintiff] Cruz's FLSA claim and [defendant] Winter Garden Realty's affirmative defenses." *Id.* at *9. Magistrate Spaulding, based on such analysis, recommended that the Court find the defendant's counterclaim predominated over Plaintiff's FLSA claim. *Id.*

In order to prevail on a cause of action under the FDCPA, a "plaintiff must prove that: (1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Sibley v. Firstcollect, Inc.*, 913 F. Supp. 469, 471 (M.D. La. 1995), *citing Kolker v. Duke City Coll. Agency*, 750 F. Supp. 468, 469 (D.N.M. 1990). As the FCCPA applies to all persons and is not limited to debt collectors, an FCCPA plaintiff need not plead or prove the second element above. *See Gann v. BAC Home Loans Serv'g LP*, 145 So. 3d 906, 910 (Fla. 2d DCA 2014); *see also Kelliher v. Target Nat. Bank*, 826 F. Supp. 2d 1324, 1327 (M.D. Fla. 2011). Accordingly, the elements of Plaintiffs' FCCPA claims include only the first and third elements recited above. In order to prevail on a cause of action under the TCPA, Plaintiffs must prove that (1) Defendant placed calls (2) using an automatic telephone dialing system (3) to Plaintiffs' cellular telephones (4) without prior Plaintiffs' prior express consent to do so. *See* 47 U.S.C. § 227(b)(1)(A)(iii); *see also Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265, 1266 (11th Cir. 2014).

Meanwhile, in order to prevail on its breach of contract claims, Defendant must prove (1) the existence of a valid contract between Plaintiffs and Defendant; (2) a material breach of such contract by Plaintiffs; and (3) damages suffered by Defendant as a result of such material breach. *See Havens v. Coast Florida, P.A.*, 117 So. 3d 1179, 1181 (Fla. 2d DCA 2013), *citing Rollins,*

14

*Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006).   In order to prevail on its goods delivered or sold claim, Defendant must prove that (1) goods were delivered or sold to Plaintiffs by Defendant and (2) Plaintiffs owe money for the delivery or sale of such goods.   *See* Fla. R. Civ. Pro. Form 1.935; *see also Amendments to the Florida Rules of Civil Procedure*, 773 So. 2d 1098, 1143 (Fla. 2000).   Finally, in order to prevail on its unjust enrichment claim, Defendant must prove that (1) Defendant conferred upon Plaintiffs a benefit; (2) Plaintiffs appreciated the benefit; and (3) Plaintiffs' acceptance and retention of the benefit make it inequitable for them to retain such benefit without paying the value thereof.   *See Malamud v. Syprett*, 117 So. 3d 434, 437 (Fla. 2d DCA 2013).   Furthermore, Plaintiffs assert that Defendant took certain actions to waive its right to collect the remainder of the amounts allegedly owed under the contracts at issue in Defendant's Counterclaim.   Accordingly, one of the defenses to Defendant's Counterclaim will be waiver of a contractual right, which issue is governed by state contract law.

When applying Magistrate Spaulding's analysis in *Cruz* to the case at bar, the result is the same: the Counterclaim clearly predominates over Plaintiffs' claims.   All of the elements required to prove Defendant's debt collection claims are foreign to Plaintiffs' TCPA and FCCPA claims.   "Courts considering supplemental jurisdiction have declined to exercise jurisdiction in cases in which state law claims require different or foreign elements of proof."   *Dowell v. Kidz R 4 Uz, Inc.*, 2008 WL 4613049, *2 (M.D. Fla. 2008) ("[b]ecause the counterclaim likely will require application of state law and resolution of facts entirely separate from the [Plaintiff's main] FLSA claim, it is likely substantially to predominate over the FLSA claim").   Significantly, Defendant's Counterclaim includes a total of *ten* counts – eight for alleged breaches of separate contracts, one for goods delivered or sold, and one for unjust enrichment.   On sheer volume alone, it is readily apparent that Defendant's Counterclaim is likely to

15

substantially predominate over Plaintiffs' action.   Indeed, the Counterclaim appears to be designed specifically to serve that purpose.   Accordingly, this Court should decline to exercise supplemental jurisdiction over Defendant's Counterclaim under § 1367(c)(2).

ii.   <u>Strong public policy reasons favor declining to exercise supplemental jurisdiction over the Counterclaim under § 1367(c)(4)</u>

Under 28 U.S.C. § 1367(c)(4), this Court may also decline to exercise supplemental jurisdiction over Defendant's Counterclaim for any other "compelling reasons" to do so.   Federal courts across the country have frequently declined to exercise jurisdiction over counterclaims for the underlying debt allegedly owed by a debtor bringing an FDCPA action.   In so deciding, courts cite to the purpose of the FDCPA and the "chilling effect" of entertaining such counterclaims.   In one California case brought under the FDCPA, in which the defendant creditor brought a counterclaim for the underlying debt, the United States District Court for the Eastern District of California had this to say:

> In a case such as this one, strong policy reasons favor declining to exercise jurisdiction [over the counterclaim].   As the court states in *Leatherwood*, allowing a debt collector to bring an action for the underlying debt in a case brought under the FDCPA may deter litigants from pursuing their rights under that statute:
>
> > To allow a debt collector defendant to seek the debt in the federal action to enforce the FDCPA might well have a chilling effect on persons who otherwise might and should bring suits such as this […] Given the remedial nature of the FDCPA "and the broad public policy which it serves, federal courts should be loath to become immersed in the debt collection suits of … the target of the very legislation under which" a FDCPA plaintiff states a cause of action.
>
> […]  A major purpose of the FDCPA is to protect individuals from unfair debt collection practices *regardless of whether the individual actually owes a debt*.

*Marlin v. Chase Cardmember Servs.*, 2009 WL 1405196, *4-5 (E.D. Cal. 2009), *quoting Sparrow,* 385 F. Supp. 2d at 1070-1071 (emphasis added, internal citations omitted); *see also Leatherwood,* 115 F.R.D. at 50 ("[t]o allow a debt collector defendant to seek to collect the debt in the federal action to enforce the FDCPA might well have a chilling effect on persons who otherwise might and should bring suits such as this"); *Witt v. Experian Info. Sols., Inc.*, 2008 WL 2489132, *4 (E.D. Cal. 2008) ("[s]trong policy reasons exist to prevent the chilling effect of trying FDCPA claims in the same case as state law claims for collection of the underlying debt"); *Randall,* 2009 WL 2710141 at *6 ("considering the purpose of the FDCPA is to give those harmed by an alleged FDCPA violation a remedy against a debt collector regardless of whether the underlying debt is valid, the Court is persuaded to follow the majority of the district courts in the Ninth Circuit that strong public policy reasons exist for declining to exercise jurisdiction over [the defendant creditor's counterclaim]").

The strong public policy reason for federal courts to decline jurisdiction over counterclaims in FDCPA actions is no less compelling to courts deciding FCCPA matters, as the statute requires "due consideration and great weight" be given to FDCPA decisions under Fla. Stat. § 559.77(5), and further requires that FCCPA complainants be provided greater protections than they would otherwise be afforded under the FDCPA in the event of any conflict. *See* Fla. Stat. § 559.552; *see also Laughlin v. Household Bank, Ltd.*, 969 So. 2d 509, 512-13 (Fla. 1st DCA 2007) ("[t]he FCCPA is to be construed in a manner that is protective of the consumer"). Accordingly, strong public policy considerations bar Defendant's Counterclaim in this action. Allowing the Counterclaim to move forward creates a "chilling effect" which serves to deter litigants from filing lawsuits against creditors who legitimately violate the FCCPA, and allows

creditors to essentially escape the consequences of their illegal actions.  Accordingly, this Court should decline supplemental jurisdiction of Defendant's Counterclaim under § 1367(c)(4).

iii.   The *Gibb* factors also suggest this Court should decline supplemental jurisdiction of the Counterclaim

Although § 1367(c) is instructive to district courts as to when they may decline supplemental jurisdiction of certain claims, the relevant case law suggests that such factors are not all-inclusive.  Prior to enactment of § 1367, the United States Supreme Court provided guidance on discretion of district courts to decline supplemental jurisdiction in the case of *Un. Mine Workers v. Gibbs*, 383 U.S. 715 (1966).  Courts in the Eleventh Circuit continue to consider the additional factors outlined in *Gibbs* when deciding whether to decline supplemental jurisdiction.  *See Palmer*, 22 F. 3d at 1566; *see also Zambrana v. Geminis Envios Corp.*, 2008 WL 2397624, *5 (S.D. Fla. 2008).  The *Gibbs* factors include "judicial convenience, fairness to the parties, and whether all the claims would be expected to be tried together."  *Palmer*, 22 F. 3d at 1569 *citing Gibbs*, 383 U.S. at 725-26.

Applying the *Gibbs* factors to this case still suggests that the Court should decline jurisdiction of Defendant's Counterclaim.  First, accepting jurisdiction of Defendant's Counterclaim will undoubtedly double the length of trial, complicate and confuse matters that are better left separate from one another, and require this Court to consider state law debt and contract matters of no federal significance.  Second, based on the strong public policy against allowing creditors to file debt collection counterclaims in consumer protection cases, it would not be fair to Plaintiffs, nor would it serve public policy, to allow Defendant's Counterclaim to move forward in this case.  There is no unfair prejudice to Defendant, who is free to litigate its action in state court.  Finally, the claims should *not* be tried together, as explained above.  Plaintiffs' TCPA and FCCPA claims share no factual or legal similarities with Defendant's

18

claims, aside from the similarity of parties involved and the fact that a debt allegedly exists. Accordingly, consideration of the *Gibbs* factors warrants declining jurisdiction of Defendant's Counterclaim.

Based on the arguments above, it is clear that Defendant's Counterclaim is permissive and not compulsory. Accordingly, this Court has the discretion to decline jurisdiction of the Counterclaim under 28 U.S.C. § 1367(c), which this Court should exercise. Allowing Defendant's Counterclaim to be entertained in this action is inconvenient to the Court, unfair to the Plaintiffs, and contrary to the strong, widely-recognized public policy that underlies Plaintiffs' claims. Supplemental jurisdiction of Defendant's Counterclaim should be refused, and this Court should dismiss Defendant's Counterclaim without prejudice to Defendant's ability to bring such claims in state court.

## CONCLUSION

Based on the foregoing, this Court does not have supplemental jurisdiction of Defendant's state law Counterclaim under § 1367(a), and thus the Counterclaim must be dismissed. Alternatively, this Court should exercise its discretion under § 1367(c) to decline jurisdiction over Defendant's Counterclaim and dismiss same.

WHEREFORE the Plaintiffs, DELBERT JENNINGS and REBECCA JENNINGS, respectfully request this Honorable Court enter an order dismissing Defendant's Counterclaim (Doc. No. 4), and grant any further relief that this Honorable Court deems just and proper.

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2015, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF system and the following parties received electronic notification through the CM/ECF system:

Michael David Randolph
michael.randolph@gray-robinson.com
GrayRobinson, P.A.
8889 Pelican Bay Blvd., Suite 400
Naples, FL 34108
(239) 552-4810
(239) 598-3164
*Attorney for Aaron's Sales & Lease Ownership, Inc.*

Brian Keith Oblow
brian.oblowh@gray-robinson.com
GrayRobinson, P.A.
8889 Pelican Bay Blvd., Suite 400
Naples, FL 34108
(239) 552-4810
(239) 598-3164
*Attorney for Aaron's Sales & Lease Ownership, Inc.*

Dated: July 2, 2015

*Respectfully submitted,*

**THE DELLUTRI LAW GROUP, P.A.**
The Dellutri Law Group Plaza
1436 Royal Palm Square Blvd.
Fort Myers, FL  33919
(239) 939-0900
(239) 939-0588 – Fax
www.DellutriLawGroup.com
*Attorneys for Plaintiff*

By:  /s/ Joseph C. LoTempio
     Joseph C. LoTempio, Esq.
     Fla. Bar No. 0086097
     jlotempio@dellutrilawgroup.com